UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------
JOSEPH LOWENBIEN as parent and guardian of
M.L. on behalf of himself and
all other similarly situated consumers

                              Plaintiff,

               -against-


AUDIT SYSTEMS, INC.

                             Defendant.

-----------------------------------------------------------

## CLASS ACTION COMPLAINT

### *Introduction*

1.    Plaintiff Joseph Lowenbien, as parent and guardian of M.L., seeks redress for the illegal practices of Audit Systems, Inc. concerning the collection of debts, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

### *Parties*

2.    Plaintiff is a citizen of the State of New York who resides within this District.

3.    Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in that the alleged debt that Defendant sought to collect from Plaintiff is a consumer debt.

4.    Upon information and belief, Defendant's principal place of business is located in Clearwater, Florida.

5.    Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

6.    Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

### Jurisdiction and Venue

7.    This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

8.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### Allegations Particular to the Plaintiff

9.    Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from the Plaintiff.

10.   On or about October 23, 2018, the Defendant mailed Plaintiff a letter seeking to collect an account associated with Plaintiff's minor child, herein after referred to as "M.L.", which was purportedly owed to The Promptcare Companies ("Promptcare").

11.   The Plaintiff subsequently contacted the Defendant on or about November 7, 2018, and spoke to a representative by the name of Samantha regarding the said account.

12.   The Plaintiff informed the Defendant that the patient, M.L., had a Medicaid insurance plan at the time of the medical care.

13.   Plaintiff attempted to dispute the debt, but the Defendant responded that Plaintiff would have to contact the health insurance company directly in order to discuss this debt.

14.   Said statement is a misrepresentation of the Plaintiff's dispute rights.

15.   The Defendant's information further misrepresented to the Plaintiff that his child's insurance company was refusing to take care of the relevant medical bill(s), without having any knowledge regarding whether or not this was actually the case.

16.   The alleged debt was non-existent.

17.   The Plaintiff would certainly not have agreed to any medical services that would not be

covered by insurance.

18.    A valid debt for medical services "only rests upon a showing by the provider that the services were performed and accepted with the understanding on both sides that there was a fee obligation." Shapira v United Med. Serv., 15 NY2d 200, 210, 205 NE2d 293, 257 NYS2d 150 (Court of Appeals of New York 1965); Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, No. 16-2165-cv, 2017 BL 407422 (2d Cir. Nov. 14, 2017). ("[S]ection 1692f contains a non-exhaustive list of unfair practices, including the collection of an invalid debt.")

19.    The Defendant is well aware that any implied contract can only rest upon a showing by the provider, that the services were performed and accepted with the understanding of both sides that there was a fee obligation.

20.    Defendant violated 15 U.S.C. § 1692e(10) by misrepresenting that Plaintiff's insurance company was unwilling to assist Plaintiff in connection with her medical bills.

21.    Defendant represented that Plaintiff's insurance company had processed the said claim and that they would not cover the alleged debt, when Defendant had no factual basis with which to make such representation.[1]

22.    The balance due had in fact, already been paid by the patient's insurance company, United Healthcare Community Plan ("UHC").

23.    Upon information and belief, the Defendant was fully aware that the balance had already

---

[1] See Ponce v. BCA Fin. Servs., Inc., 2012 WL 470213 (11th Cir. Feb.14, 2012). ("The district court rejected [The debt collectors] argument that because it is not disputed that no insurance company has paid the medical bill despite attempts by the medical provider to obtain payment, [The debt collectors] statement ["sir, your insurance company will not go ahead and take care of this now,"] was indeed true, and therefore, cannot be deemed to have been false or misleading. The district court noted that our circuit has evaluated FDCPA's claims under the "least sophisticated consumer" standard. Here, although [The debt collector] based her statement on her general experience about insurance claims, she had no particular information to support her statement about [the debtor] insurance, and therefore, the district court concluded that she based her statement on an assumption which was meant to coax [the debtor] into paying the bill. We see no reversible error in the district court's conclusion that this statement would have been misleading to the least sophisticated consumer and therefore violated § 1692e(10).")

been covered by Medicaid, yet Defendant continued to seek payment from the Plaintiff.

24. The said debt was therefore non-existent as the Plaintiff did not owe the balance.

25. New York law provides that a medical provider must accept payment in full from Medicaid and that that provider cannot seek any additional payments from the patient.

26. Promptcare violated 42 C.F.R. § 447.15; therefore Promptcare is un-eligible for future Medicaid compensation.

27. A Medicaid provider is prohibited from seeking payment from a Medicaid beneficiary of amounts not reimbursed by the state program.  42 C.F.R. § 447.15 provides that a state plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency.  42 C.F.R. § 447.15 prevents health care providers and their agents from seeking contributions from patients beyond the limits set by the Medicaid regulatory scheme.

28. As per New York's Medicaid rules, Medicaid beneficiary's "must not be referred to a collection agency for collection of unpaid medical bills or otherwise billed, except for applicable Medicaid co-payments."

29. The bill being sought by Defendant is not an applicable co-payment but rather an attempt to collect the actual debt.

30. By sending a collection letter to the Plaintiff to collect on the debt, Defendant misrepresented the status of the debt as collectible, when it is not allowed to attempt to collect the debt from the Plaintiff, and Plaintiff is not required to pay it.[2]

---

[2] Raytman v. Jeffrey G. Lerman, P.C., 2018 U.S. Dist. LEXIS 180075, at *13-15 (S.D.N.Y. Oct. 19, 2018). ("Here, not only did Plaintiff not have personal knowledge of the validity of the debt, but she would have had to be "familiar with thousands of pages of Medicaid regulation which include the fact that [she was] not obligated to pay certain medical bills," in order for her not to have been misled by the notice. (Def. Reply 13). This Court cannot find that the average consumer, much less the least sophisticated consumer, would have a working knowledge of those regulations... the Second Circuit found that the letter was misleading because it misstated the plaintiff's debt obligation [and] this Court cannot expect that the "least sophisticated consumer" would have a working knowledge of New York's Medicaid payment rules, and thus that such a consumer would have been misled by the October Letter. Plaintiff has thus plausibly alleged that the letter was misleading, in violation of § 1692e... Plaintiff alleges that Defendant attempted to collect a debt that was not authorized under the New York Medicaid Rules. In fact, "state

31.    The said debt was unauthorized, and the Defendant deceptively engaged in illegal balance billing by seeking to collect on the said account.

32.    The Plaintiff's insurance company themselves, informed the Plaintiff that the charges for those alleged medical services rendered had been paid.

33.    UHC has confirmed that Promptcare is and was a participating provider.

34.    UHC has stated that this is an illegal debt.

35.    The account that the Defendant was seeking to collect upon was non-existent; the Defendant made the Plaintiff believe that he in fact owed such an amount to the Defendant when it was not the case.

36.    Defendant misrepresented Plaintiff's debt obligation, in violation of 15 U.S.C. § 1692e(2).

37.    Said letter misstated Plaintiff's Debt obligation, by requesting payment of the Debt.

38.    Defendant's statement would be deceptive to almost any consumer and it would certainly mislead the most ignorant, unthinking, and credulous portion of the population described by the Second Circuit in *Clomon v. Jackson, 988 F. 2d 1314 - Court of Appeals, 2nd Circuit 1993.*[3]

39.    Here, although the debt collector based its statement on the general experience about insurance claims, the collector has no particular information to support its statement about the debtor's insurance, and therefore, the collector based its statement on an assumption

law expressly prohibits the collection of medical bills other than applicable co-payments from New York Medicaid recipients." (Pl. Opp. 17). As discussed above, Plaintiff has plausibly pleaded that Defendant attempted to collect an invalid debt, in violation of Medicaid regulations. Therefore, Plaintiff [*16] has stated a plausible claim under § 1692 and does not need to plead further allegations of unfairness or unconscionability.")

[3] In Ponce v. BCA Financial Services, Inc., Docket No. 33 1:10-cv-20337 (S.D. Fla. May 24, 2011). the Defendant asserted that its statement to Plaintiff (that his insurance would not cover his outstanding bill) would not have deceived the "least sophisticated consumer" or any consumer because it was true and it was undisputed that no insurance company come forward to pay Plaintiff's bill, and the original creditor had provided a sworn affidavit that it exhausted all opportunities to obtain payment from any insurance provider before. The court stated: "I can only conclude that [the debt collector] told Plaintiff that his insurance company would not cover his bills in order to coax him into making a payment. Rather than field his many questions or alleviate his obvious confusion about the underlying charges and the insurance company's refusal to pay them, [the debt collector] simply invented a reason to terminate the conversation and disguised it as personal knowledge: "Well, sir your insurance company will not go ahead and take care of this now."… I find that [the debt collectors] statement would be deceptive to almost any consumer and it would certainly mislead the most ignorant, unthinking, and credulous portion of the population described by the Eleventh Circuit in *Jeter*." **Affirmed by Ponce v. BCA Fin. Servs., Inc., 2012 WL 470213 (11th Cir. Feb.14, 2012)**

which was meant to coax the debtor into paying the bill. This statement is misleading to the least sophisticated consumer and therefore violated § 1692e(10).[4]

40.   Defendant used a "false representation" in a debt collection effort in violation of 15 U.S.C. § 1692e(10), and attempted to collect a debt amount not "expressly authorized by the agreement creating the debt or permitted by law" in violation of § 1692f(1).

41.   Defendant attempted to collect an amount not authorized by agreement or permitted by law in fact, by attempting to collect on this non-existent debt; Defendant violated other federal laws.

42.   Section 1692e of the FDCPA states:

> "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of --
>
> (A) the character, amount, or legal status of any debt."

43.   Section 1692(f) of the FDCPA states:

> "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

---

[4] See. Ponce v. BCA Financial Services, Inc., Docket No. 33 1:10-cv-20337 (S.D. Fla. May 24, 2011). ("This position does not comport with common sense. Adopting it would permit [the debt collector] to summarily obtain $378.35 from [the debtor] based on nothing more than an assumption that happened to be correct.") Affirmed by Ponce v. BCA Fin. Servs., Inc., 2012 WL 470213 (11th Cir. Feb.14, 2012)

44.     The Defendant misrepresented the legal status of the alleged debt, as the debt was not owed by the Plaintiff.[5]

45.     Defendant violated 15 U.S.C. §§ 1692e(2)(A) and 1692f(1) of the FDCPA for the false representation of the character, amount, or legal status of the debt, and for collecting on a debt which was not expressly authorized by the agreement creating the debt or permitted by law.

46.     Upon information and belief, Defendant, by not allowing Plaintiff to dispute the debt directly with them, Defendant and its employee as a matter of procedural practice and pattern never intend to follow through with the validation rights they purportedly provide in the initial communication.

47.     Upon information and belief, Defendant and its employee intentionally denied the Plaintiff his dispute rights afforded to him under the FDCPA.

48.     Upon information and belief, Defendant and its employee wrongfully stated to the Plaintiff that he could not orally dispute the debt with Defendant.

49.     Upon information and belief, Defendant and its employee threatened the failure to communicate that a disputed debt is disputed.

50.     The Defendant's employee who spoke with the Plaintiff intended to speak the said words to the Plaintiff.

51.     The acts and omissions of the Defendant and its employee done in connection with efforts to collect a debt from the Plaintiff were done intentionally and willfully.

---

[5] See Vangorden v. Second Round, Ltd. P'ship, No. 17-2186-cv, 2018 U.S. App. LEXIS 20939, at *7-9 (2d Cir. July 27, 2018). ("In sum, because [the debtor] pleaded facts plausibly asserting [the debt collectors] misrepresentation of her Debt obligation, her § 1692e(2) claim should not have been dismissed under Fed. R. Civ. P. 12(b)(6). Further, because the June Letter, after allegedly misstating [the debtors] Debt obligation, requested payment of the Debt, we conclude that [the debtor] has plausibly alleged that [the debt collector] both used a "false representation" in a debt collection effort in violation of § 1692e(10), and attempted to collect a debt amount not "expressly authorized by the agreement creating the debt or permitted by law" in violation of § 1692f(1)...Thus, by pleading that defendant attempted to collect an amount not authorized by agreement or permitted by law, the plaintiff has stated a plausible claim under § 1692f(1) without need for further allegations of unfairness or unconscionability.")

52. Upon information and belief, Defendant and its employees intentionally and willfully violated the FDCPA and do so as a matter of pattern and practice by not letting any of the class members orally dispute the debt and by maintaining that the debtors have a valid reason to dispute any debt contrary to the FDCPA and the rights given by the Defendant purportedly in the validation notice.

53. As mentioned above, Defendant Audit sent a collection letter dated October 23, 2018 which was addressed to the Plaintiff's minor child, M.L., and not to the Plaintiff.

54. Defendant Audit sent the letter addressed to the minor child declaring a "**TOTAL BALANCE DUE**."

55. Defendant Audit violated the FDCPA by attempting to collect a debt from a minor who is not liable for the alleged debt, and by claiming, attempting, or threatening to enforce a right to payment by the minor child when Defendant knew, or had reason to know that no such right existed at the time it sent the bill and collection letter. See Myers v. Americollect, Inc., 194 F. Supp. 3d 839 (E.D. Wis. 2016). (parent of minor patient stated claim against collector and hospital that sent the bill and dunning letter to the child instead of the financially responsible parent)

56. Defendant Audit falsely represented the legal status of the debt by asserting or suggesting that a minor child, was liable for the medical debt.

57. Defendant Audit's letter constituted an effort to enforce a right to payment that it knew or should have known did not exist, as the patient was a minor child.

58. Defendant Audit knew that the bill would threaten or harass the Plaintiff.

59. Under the common law doctrine of necessaries, a minor's parents are liable for medical services provided to a minor before his or her eighteenth birthday, but the minor is not

liable for such expenses.[6]

60.     Defendant on behalf of its client Promptcare, were both attempting to collect a debt from M.L. when M.L. was not liable for the alleged debt.

61.     Promptcare was surely aware that M.L. is a minor before hiring Defendant Audit to collect the debt.

62.     Further, Defendant and/or the creditor may be reporting the alleged debt as a negative item against M.L. with credit reporting agencies.

63.     Negative information, including the existence of a collection account, stays on a person's "credit report" CRAs for seven years. Falsely reporting to CRAs that a minor child is delinquent on a debt she does not owe harms that child's credit and may for example, negatively impact the child's ability to receive student loans.

64.     Upon information and belief, Defendant has no reasonable procedures to prevent the dunning of minors.

65.     The sole purpose of sending such a letter, addressed to M.L., was to unduly harass the Plaintiff into paying the alleged debt, potentially before paying other debts in violation of 15 U.S.C. § 1692e.

66.     Defendant's letter violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1) for attempting to collect a debt from a minor who was not liable for the alleged debt.

67.     Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

---

[6] Madison Gen. Hosp. v. Haack, 124 Wis.2d 398, 369 N.W.2d 663 (1985). (a minor's parents, and not the minor herself, were liable for medical bills incurred by the minor), Davig v. Hamburg Mut. Ins. Co., 1993 Wisc. App. LEXIS 1687, *9, 181 Wis. 2d 365 (Wis. Ct. App. 1993), see also Dean Med. Ctr., S.C. v. Conners, 238 Wis. 2d 636, 646-47, 618 N.W.2d 194, 199-200 (Ct. App. 2000). (under the doctrine of necessaries, the non-custodial parent is responsible for medical costs incurred for care of minor child).

68.   Plaintiff suffered actual harm by being the target of the Defendant's misleading debt collection communications.

69.   Defendant violated the Plaintiff's right not to be the target of misleading debt collection communications.

70.   The Defendant violated the Plaintiff's right to a truthful and fair debt collection process.

71.   The Defendant used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

72.   Defendant's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendant's collection efforts.

73.   The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. Defendant's false representations misled Plaintiff in a manner that deprived him of his right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

74.   These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

75.   As an actual and proximate result of the acts and omissions of Audit Systems, Inc., the Plaintiff has suffered including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment for which he should be compensated in an amount to be established by a jury at trial.

## AS AND FOR A CAUSE OF ACTION

***Violations of the Fair Debt Collection Practices Act brought by Plaintiff on behalf of himself and the members of a class, as against the Defendant.***

76.     Plaintiff re-states, re-alleges, and incorporates herein by reference, paragraphs one (1) through seventy five (75) as if set forth fully in this cause of action.

77.     This cause of action is brought on behalf of Plaintiff and the members of two classes.

78.     Class A consists of all persons whom Defendant's records reflect resided in the State of New York and who were sent a collection letter in substantially the same form letter as the letter sent to the Plaintiff on or about October 23, 2018; and (a) the collection letter was sent to a consumer seeking payment of a personal debt purportedly owed to Promptcare; and (b) the collection letter was returned by the postal service as undelivered; (c) and Plaintiff asserts that the letter contained violations of 15 U.S.C. §§ 1692e(2)(A) and 1692f(1) for the false representation of the character, amount, or legal status of the debt, and for collecting on a debt which was not expressly authorized by the agreement creating the debt or permitted by law.

79.     Class B consists of all persons whom Defendant's records reflect resided in the State of New York and who were sent a collection letter in substantially the same form letter as the letter sent to the Plaintiff on or about October 23, 2018; and (a) the collection letter was sent to a consumer seeking payment of a personal debt purportedly owed to Promptcare; and (b) the collection letter was returned by the postal service as undelivered; (c) and Plaintiff asserts that the letter contained violations of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1) for attempting to collect a debt from a minor who was not liable for the alleged debt.

80.    Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

    A.   Based on the fact that a form collection letter is at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

    B.   There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the Defendant violated the FDCPA.

    C.   The only individual issue is the identification of the consumers who received such collection letters (*i.e.* the class members), a matter capable of ministerial determination from the records of Defendant.

    D.   The claims of the Plaintiff are typical of those of the class members. All are based on the same facts and legal theories.

    E.   The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and collection-abuse claims. The Plaintiff's interests are consistent with those of the members of the class.

81.    A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. § 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk

of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

82.     If the facts are discovered to be appropriate, the Plaintiff will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

83.     Collection attempts, such as those made by the Defendant are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

### *Violations of the Fair Debt Collection Practices Act*

84.     The Defendant's actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

85.     Because the Defendant violated the Fair Debt Collection Practices Act, the Plaintiff and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendant and award damages as follows:

   A.   Statutory damages provided under the FDCPA, 15 U.S.C. § 1692(k);

   B.   Attorney fees, litigation expenses and costs incurred in bringing this action; and

   C.   Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Woodmere, New York
October 23, 2019


_____/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C.  (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com


Plaintiff requests trial by jury on all issues so triable.


_____/s/ Adam J. Fishbein____
Adam J. Fishbein (AF-9508)

**AUDIT SYSTEMS INCORPORATED**
3696 Ulmerton Rd. ● Suite 200 ● Clearwater, FL 33762
**Toll Free Phone: (800) 741-1969**
North Carolina Department of Insurance Permit Number 100606

Date: **October 23, 2018**

**TOTAL BALANCE DUE: $560.00**

M[ ][ ].

The below referenced account(s) have been sent to our office for collection.

| CREDITOR NAME | ACCOUNT # | SERVICE DATE | BALANCE DUE |
|---|---|---|---|
| THE PROMPTCARE COMPANIES | 7921744 | 04/22/17 | $ 280.00 |
| THE PROMPTCARE COMPANIES | 7921744 | 05/22/17 | $ 280.00 |

To pay online please visit our website at www.auditsystemsinc.net. Click on the Payments tab and then click on "Pay Now". Your Client Account Number to reference is [ ]04.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

This is a communication from a debt collector attempting to collect a debt. Any information obtained will be used for this purpose.

Our office hours are Monday-Thursday 8:00am to 9:00pm EST and Friday 8:00am to 7:00pm EST. If this account is due to loss, theft or forgery, you may mail an affidavit of forgery to our office.

If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:

1. Supplemental security income, (SSI);
2. Social security;
3. Public assistance (welfare);
4. Spousal support, maintenance (alimony) or child support;
5. Unemployment benefits;
6. Disability benefits;
7. Workers' compensation benefits;
8. Public or private pensions;
9. Veterans' benefits;
10. Federal student loans, federal student grants, and federal work study funds; and
11. Ninety percent of your wages or salary earned in the last sixty days.
Notice to residents of New York City:

New York City Department of Consumer Affairs license number 1023685.

Sincerely,

Jennifer Banks

400ONAUDT01230_106786091